ROANE, Judge.
The first question I shall consider in this cause, is, upon the.title to the slaves mentioned in the declaration.
This question depends upon the limitation over to Hig~ genbotham, as found by the special verdict. The clause on which the question depends, is as follows: “That on the 30th of January, 1793, the defendant married the plaintiff’s daughter; after which, the plaintiff gave her the negroes in question, to her and the heirs of her body; and in case she died without issue, that is, children of her body, the said negroes to return to the plaintiff.”
*268 It is a clear principle, that a limitation of personal estate, after an indefinite failure of issue, is void, as tending to a perpetuity; but, it is also a principle, that with respect to personal estate, the Courts incline to lay hold of any words which tend to restrict the generality of the words “dying without issue,” to mean “dying without issue living at the death.”
Thus, a limitation to a person in esse for life, after a dying without issue, is good; because the contingency must happen, if at all, in the life-time of the remainder-man; and the limitation to him for life, restrains the generality of the words “dying without issue.” Otherwise, if the limitation had been to him in fee, or in tail; in that case, there would be no such restriction, and the limitation over would be void. My opinion upon the particular principle, formed on thorough investigation, was expressed in this Court in the case of Pleasants v. Pleasants, (see next case;) and that opinion I now wish to be understood to refer to and adopt.
There is a circumstance in this case, which appears to me to have this restrictive operation; that is to say, that the negroes are to return back to the plaintiff in the event of the daughters dying without children.
It is here to be observed, that the limitation is to the plaintiff himself. It is not to his heirs or representatives,* and it cannot reasonably be inferred to have been the donor’s intention that the negroes should revert to his representatives at a remote distance of time. This limitation then is similar to the limitation for life before spoken of; and restrains the generality of the words “ issue of her body,” to an event within the period of a life in being.
Without resorting further to the standard of general principles for the decision of this point, there is a case from 1 P. Wms. 534, Hughes v. Sayer, which seems decisive of this case; where C. having two nephews A. and B., devised his personal estate to them, and if either die without children, then to the survivor. Here dying without children was restrained to mean without children then living; because, the immediate limitation over was to the surviving devisee, as in the case at bar the immediate limitation over was to the surviving father; and the case of *269 Nicholls v. Skinner, Prec. Ch. 528, is upon the same principle, and is perhaps still stronger, as the word issue is there restrained on the same reason with the word children in the case just mentioned from Peere Williams.*
My opinion then, is, that the title of the slaves in question is in the present appellant.
But, the verdict of the jury is erroneous, in finding the value of the slaves aggregately, which was certainly meant to be done here under the word “ damages.” Thejudgment of the County Court is therefore erroneous as to this point, and in not awarding a venire facias de novo to ascertain the separate value of the slaves. Consequently, I think that the judgment of the District Court reversing that of the County Court- in toto ought to be reversed, and the judgment agreeable to the ideas above-mentioned, entered.
FLEMING and CARRINGTON, Judges. Of the same opinion.
LYONS, Judge. The intention clearly was, that the slaves should return to the grantor in the event of the daughter’s dying without leaving any children; which was a reasonable period, and if a Court of Equity had been called upon to execute the agreement, the conveyance would have been in that form. The intention was rational, and the limitation confined within proper limits. Therefore, there is no question upon the title. But, there ought to have been a new writ of enquiry in order to ascertain the values of the slaves. I think, therefore, that the judgment of the District Court should be reversed; and, that of the County Court affirmed as to the title, but reversed also as to the damages; and, that a new writ of enquiry should fee awarded to ascertain the values of the slaves.
PER C UR. The Court Is of opinion, that the judgment of the District Court is erroneous. Therefore, it is to be reversed with costs; and this Court, proceeding to give such judgment as the said District Court ought to have given, is of opinion, that the judgment of the County Court is erroneous, in not awarding a writ of enquiry to ascertain the separate prices or values of the slaves in the declaration mentioned, the jury having found the value of *270 all the slaves in a gross sum. Therefore, that judgment [s a]s0 to be reversed; and the suit is to be remanded to the County Court, for a writ of enquiry to be awarded, to ascertain the separate prices of the slaves; and after the execution of such writ of enquiry, for judgment to be entered for the appellant, for the slaves, or their respective prices. *

[* See Timberlake et ux. v. Graves, 6 Munf. 174; Greshams v. Gresham et al. 6 Munf. 187; Didlake v. Hooper, Gilmer, R. 194; Bradley v. Mosby; 3 Call, 50.]

[* Cordle's adm’r. v. Cordle's ex’r. 6 Munf. 455.]

[* Cornwell v. Truss, 2 Munf. 195; Holladay et ux, v. Littlepage, 2 Munf. 539.]